IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent/Plaintiff, | ) | |
| vs. | ) | No. 3:97-CR-0208-T(01) |
| | ) | No. 3:04-CV-0413-D (BH) |
| ROBERT A. MACKAY, ID # 03473-063, | ) | ECF |
| Movant/Defendant. | ) | Referred to U.S. Magistrate Judge |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A.  Nature of the Case

Movant, a current inmate in the federal prison system, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to the provisions of 28 U.S.C. § 2255 to challenge his federal conviction and sentence in Cause No. 3:97-CR-0208-T. The respondent is the United States of America (government).

### B.  Initial Proceedings

On June 24, 1997, the government indicted movant and eighteen others, including movant's wife Kris Mackay (wife), Jose Armando Rosales (Rosales), David Larry Mears (Mears), Steve Sands (Sands), Frank Cox (Cox), and Xavier Salinas (Salinas), in a drug conspiracy. (*See generally* Indictment, doc. 1.)[1] Movant was subsequently charged in a superseding indictment with conspiracy to

---

[1]All document numbers refer to the docket number assigned to the pleading in the underlying criminal action, No. 3:97-CR-208-T.

distribute and to possess with intent to distribute at least 1,000 kilograms of a substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846 (Count1); using a telephone to facilitate the conspiracy (Counts 2, 4, and 20); and conspiracy to commit money laundering (Count 21). (*See* Superseding Indictment, doc. 242.)

On June 30, 1997, movant was arrested in the Eastern District of Oklahoma on the criminal charges pending against him in this Court. At that time, he was represented by attorney Jerry D. Patchen (Patchen). On July 23, 1997, this Court granted movant's motion to substitute attorney Bradley Keith Lollar (Lollar) for Patchen. (*See* Order Granting Def.'s Mot. Substitute, doc. 95.) On September 5, 1997, the Court granted Jim Tatum (Tatum) leave to appear pro hac vice for movant and movant's wife. (*See* Order dated Sept. 5, 1997, doc. 253.) The Court subsequently issued a notice, which stated: "The Court seldom allows a single attorney to represent multiple defendants in the same criminal action because of the potential for conflicts of interest", and directed counsel to address the dual representation issue. (*See* Notice Concerning Mot. for Entry of Appearance, doc. 255.) On September 19, 1997, Tatum signed and submitted a response to the Court's notice on behalf of movant and his wife. (*See* Resp. to Notice, doc. 286.) He therein stated that, although movant and his wife "are aware of the legal technicalities that can arise where more than one defendant in a criminal case is represented by one lawyer", they "feel that it is in their best interest to be represented by Jim Tatum until such time as a real conflict of interest exists." (*Id.* at 1.) They "advised Jim Tatum that in no way will either of them attempt to better their legal position at the expense of the other, and they both request that Jim Tatum serve as counsel for both of them." (*Id.* at 2.)

2

On October 2, 1997, movant filed a motion to substitute Tatum for Lollar. (*See* Mot. Substitute, doc. 314.) On October 15, 1997, the Court granted that motion. (*See* Order Granting Mot. Substitute, doc. 329.) The government thereafter moved for an inquiry into the potential ethical conflict of interest that could arise from Tatum's joint representation of movant and his wife in the underlying criminal action. (*See* Mot. for Inquiry, doc. 332.) The Court appointed independent counsel to movant and to his wife so that they could be advised of the potential conflict and their right to separate representation. (*See* Order of Nov. 6, 1997, doc. 366 (showing appointment of independent counsel for movant); Order of Nov. 6, 1997, doc. 368 (showing appointment of independent counsel for wife); Order Memorializing Ruling, doc. 392 (showing appointment of independent counsel for movant and wife).)

On November 18, 1997, the Court, pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975),[2] held a hearing on the government's motion for inquiry, and movant's wife informed the Court that she desired separate representation. (*See* Order Memorializing Ruling at 1-2.) Tatum "indicated that he will henceforth represent only Robert Mackay in this criminal action." (*Id.* at 2.) The Court granted Ms. Mackay's request for separate counsel, and found that the potential conflict of interest no longer existed. (*Id.* at 1-2.)

## C.  Plea and Rearraignment

On January 5, 1998, movant entered into an agreement with the government whereby he would plead guilty to Count 1, and he signed a factual resume in which he admitted facts sufficient

---

[2]  Although the Supreme Court abrogated *Garcia* with respect to allowing an immediate appeal of pretrial disqualifications of criminal defense counsel, *see Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984), *Garcia* remains good law with respect to the requirements related to procedures for disqualification of counsel, *see United States v. Salado*, 339 F.3d 285, 288-89 (5th Cir. 2003) (applying the *Garcia* procedural requirements).

to support his plea to that count.  (*See generally* Plea Agreement, doc. 491; Factual Resume, doc. 492.)  The plea agreement contains typical provisions as set forth and discussed in more detail later in these findings, as well as a specific governmental promise that has prompted significant briefing by the parties and judicial consideration:  "All property seized by the government which has been the subject of a forfeiture action, whether administrative or judicial, and which is not listed herein as being forfeited to the government shall be returned to defendant or a person with authority to receive same."  (*See* Plea Agreement at 6.)  The agreement specifically exempts three parcels of real property, a 1995 Lincoln Towncar, assorted jewelry, and cash from this return provision.  (*See id.* at 3-5.)

Before accepting the plea, the Court examined movant as to its voluntariness.  (Tr. Re-arraignment at 2-18.)  Movant stated that he was fifty years old and attended college for approx-imately two years.  (*Id.* at 3.)  After the government read the superseding indictment as it pertained to him, movant indicated that he understood (1) the nature of the charges against him; (2) that he had an absolute right to plead not guilty to the charges and to have a trial on such charges where he could confront and cross-examine witnesses and to call witnesses in his defense; (3) that he had the right not to incriminate himself; and (4) that he was giving up these rights by pleading guilty.  (*Id.* at 5-8.)

At the request of the Court, the prosecutor informed movant of the minimum and maximum statutory sentence that he could receive upon his plea, the maximum fine that could result from his plea, the length of the mandatory term of supervised release associated with Count 1, and the impo-sition of a $100 mandatory special assessment.  (*Id.* at 8-9.)  Movant stated that he understood the range of punishment for his offense – ten years to life imprisonment.  (*Id.* at 9.)  He also indicated

4

that he understood that the Court "could set [his] sentence anywhere within the range provided by law", although the Court would consider the sentencing guidelines. (*Id.*)

The prosecutor also summarized the plea agreement on the record. (*Id.* at 10-14.) She specifically stated that "[t]here is no agreement as to what the sentence will be" in this case. (*Id.* at 10.) Further, she represented that the plea agreement provided that "through his signature on this plea agreement the defendant hereby expressly waives the right to appeal his sentence on any ground, including any appeal right conferred under 18 United States Code 3742, 28 United States Code 2255", and that he "has reviewed the factual resume and agrees with the information contained therein" and "has thoroughly reviewed all aspects of the case with his attorney, and is satisfied with his attorney's legal representation." (*Id.* at 12-13.) She also noted the language in the plea agreement indicating that the plea "is voluntarily and freely made", that the plea agreement constitutes the entire agreement between the parties, and that "[n]o other promises or representations have been made." (*Id.* at 12-14.)

Upon completion of the summary of the plea agreement, movant advised the Court that the summary accurately reflected his understanding of the agreement, that he recalled signing the plea agreement after discussing it with his attorney, and that he understood "all of the provisions of th[e] plea agreement." (*Id.* at 14.) The Court highlighted that "[o]ne of the provisions is that in the event that [the Court] accept[s] the plea agreement and follow[s] the plea agreement, for all practical purposes you will be giving up your right to appeal." (*Id.*) Movant indicated that he understood that waiver, (*id.*), and that "[o]ther than the plea agreement in this case" no one had promised him "anything or threatened [him] in any way to get [him] to plead guilty", (*id.* at 17). He specifically indicated that no one had promised him what sentence the Court would impose. (*Id.*)

5

After the prosecutor read the factual resume to him, movant agreed that the document accurately reflected the facts of this case as they applied to him. (*Id.*) The Court accepted the guilty plea after finding that the factual resume provides a factual basis for the plea, and that movant had intelligently and voluntarily pled guilty. (*Id.* at 17-18.) It ordered the preparation of a pre-sentence report (PSR (also referred to as PSI for pre-sentence investigation)), and informed movant that, after its preparation, he would "have an opportunity to review it" and if he "feel[s] any of the statements made in the report are not true, or that the sentencing guidelines that are set out in the report have been incorrectly calculated, [he] may file written objections to the report." (*Id.* at 18.)

**D.  Attempts to Withdraw Plea**

"[S]everal weeks" after entering his plea, movant "instructed his counsel to withdraw his plea as [the] government was breaching the agreement" by failing to return all items promised to be returned. (Mem. Supp. at 3.) According to movant, he subsequently received a copy of the PSR, "and it became evident then that the government was not going to comply with any of the material aspects of the plea agreement." (*Id.*) On March 30, 1998, movant formally moved to withdraw his plea on the basis that the government had breached the plea agreement by not returning certain seized property to movant. (*See* Mot. Withdraw Guilty Plea, doc. 579.)

The government requested that the Court order movant's wife "to be included as a party to the hearing on [that] motion so as to properly preserve any rights and remedies available to the government and the defendants in the event the plea agreement is withdrawn and for a fair disposition of the subject property." (*See* Gov.'s Resp. to Mot. Withdraw Plea, doc. 588, at 17.) On April 9, 1998, the Court set a hearing on movant's motion to withdraw and ordered that movant's

wife be joined in the hearing, although it specifically indicated that it was not "disposed to set aside her plea agreement."[3]  (*See* Order Setting Hr'g, doc. 596, at 2.)

On April 30, 1998, the Court held a hearing on the motion to withdraw, which it took under advisement pending additional briefing by the parties.  (*See* Tr. Mot. Withdraw at 2-24.)  Movant argued that the Court should grant specific performance of the plea agreement.  (*Id.* at 5-6.)  He alternatively argued for adjustment in the agreement so as to make him "whole either with a re-placement item or compensating value somehow to try to level the playing field to make the bargain still equitable so he's not deprived of what he bargained for."  (*Id.* at 6.)  Lastly, if neither of those alternatives were available, he argued for the withdrawal of the plea.  (*Id.*)

After receiving additional briefing regarding the alleged governmental breach of the plea agreement, the Court held a second hearing related to the motion to withdraw plea on December 17, 1998.  (*See* Tr. Mot. Withdraw dated Dec. 17, 1998, [hereinafter Second Tr. Mot. Withdraw] at 2-29.)  As reiterated at the hearing, the sole basis for withdrawing the plea was an alleged breach of the plea agreement related to the return of certain property to movant.[4]  (*See id.* at 21.)  The Court found that "the government, although negligent in making its initial promises for the plea agreement, did not do so with knowledge that the plea agreement could not be performed in all things."  (*Id.*)  It further found that "the government has taken action in good faith to bring about substantial compliance with the plea agreement."  (*Id.*)  The Court thus denied movant's request for

---

[3] Ultimately, the Court considered and rejected the government's position "that her plea agreement was contingent upon [movant's] plea agreement and was part of a 'package deal'".  (*See* Order Setting Hr'g, doc. 596, at 2.)

[4] On the date of the hearing, movant also filed a "Notice of Speedy Trial Rights Violations" wherein he argued that the government had breached the plea bargain by not returning certain property to movant as promised.  (*See* Notice of Speedy Trial Rights Violation, doc. 702, at 1.)  Movant made no other argument regarding breach of any agreement. (*See generally id.*)

specific performance, denied the motion to withdraw his plea, and granted an "equitable remedy" involving a lien on forfeited property so that movant "is not denied the benefits that he . . . anticipated from the plea agreement." (*Id.* at 22-23.)

On January 11, 1999, movant sought reconsideration of the ruling on his motion to withdraw plea. (*See* Mot. Recon., doc. 710.) He therein argued that the Court's proposed equitable remedy was insufficient. (*Id.* at 2-3.) He further argued that *Santobello v. New York*, 404 U.S. 257 (1971) requires specific performance. (*Id.* at 3.) At a sentencing hearing held April 19, 1999, the Court ordered additional briefing on forfeiture issues and withdrawal of the plea. (Tr. Sentencing Hr'g at 21-22.)

On July 21, 1999, the Court denied movant's request for reconsideration. (*See* Order of July 21, 1999, doc. 772.) On August 3, 1999, movant filed an interlocutory appeal related to the denial of his motion to withdraw plea, (*see* Notice of Interlocutory Appeal, doc. 774), that the court of appeals dismissed for lack of jurisdiction on March 6, 2000, (*see* Order of USCA, doc. 785).

**E.  Sentencing**

On April 19, 1999, movant appeared before the Court for sentencing. (Tr. Sentencing Hr'g at 1.) Movant asserted his innocence to the charged offenses and re-asserted his request that the Court allow him to withdraw his plea. (*Id.* at 7-8.) The sole basis for withdrawal of his plea remained the alleged governmental breach of the plea agreement due to a failure to return all items promised to be returned. (*See generally id.* at 1-25.) He sought a stay of sentencing because he had not filed a response to the PSR due to his belief that he was "being forced to incriminate himself . . . when he's proclaiming his innocence." (*Id.* at 8.) The Court granted the stay of sentencing pending additional briefing on forfeiture issues and withdrawal of the plea. (*Id.* at 21-22.)

8

On March 30, 2000, movant again appeared before the Court for sentencing. (Tr. Sentencing Proceedings [hereinafter Tr. Sentencing II] at 1.) Defense counsel indicated that he and movant had reviewed the PSR, and had "two or three" objections, including use of a misdemeanor conviction for sentencing calculations and characterization of movant as the leader of the drug conspiracy. (*Id.* at 2.) The government called Special Agents David Moser and Tim Jones of the Drug Enforcement Administration (DEA) and Special Agent Diana Megli of the Internal Revenue Service (IRS) to testify. (*Id.* at 3, 19-20, and 31.) Without objection, it introduced exhibits that reflect a prior conviction of movant that resulted in a fifteen to sixty month sentence. (*Id.* at 39.)

Over movant's objection, the government introduced a transcript of testimony given on June 4, 1998, related to the sentencing of co-defendant Rosales. (*Id.* at 17-18 (the transcript is within the court record as doc. 680).) At the June 4, 1998 hearing, co-defendant Mears provided testimony pursuant to a cooperation agreement with the government in exchange for his plea of guilty.[5] (Tr. Mot. Withdraw Plea and Sentencing [hereinafter Tr. of June 4, 1998] at 75, 83.) He testified that he attended a meeting with Rosales and movant in 1993 related to the charged conspiracy. (*Id.* at 75-77.) He testified that the least amount of marijuana that came "through [his] hands" related to movant was 7,500 to 10,000 pounds. (*Id.* at 80.) Co-defendant Sands also provided testimony pursuant to a cooperation agreement with the government.[6] (*Id.* at 84.) He testified that he became involved in the conspiracy in late 1994. (*Id.* at 85.) He further testified that his ledger showed that he transported about 6,000 pounds of marijuana between July 1995 and early 1997. (*Id.* at 89-90.)

---

[5] Mears pled guilty on August 21, 1997. (*See* Plea Agreement, doc. 224.) On July 25, 1998, Mears died from head injuries. (*See* Mot. Dismiss Indictment, doc. 735.)

[6] Sands pled guilty on July 31, 1997. (*See* Plea Agreement, doc. 201.)

Agent Moser testified that movant was one of two individuals who acted as leaders of the drug conspiracy involving more than five persons, and that movant was "more or less in charge of all of the distribution up through Missouri and Arkansas." (Tr. Sentencing II at 7-8.) According to him, wire taps clearly reflected that movant "was calling the shots." (*Id.* at 13.) He also testified that ledgers found at Rosales' residence reflected that the conspiracy involved more than 19,000 pounds of marijuana with a value of over seven million dollars, and that approximately 5,000 of those pounds could be directly attributed to movant. (*Id.* at 6, 8-9, 15-16.) He further testified that movant obstructed justice by instructing Rosales to advise co-defendant Salinas to concoct a story regarding a truck seized on February 25, 1997, that was involved in the drug conspiracy. (*Id.* at 60-65.)

Agent Jones testified about drug ledgers obtained from Sands. (*Id.* at 20.) He testified that those ledgers showed distribution of more than 12,000 pounds (5,706 kilograms) of marijuana with a value in excess of twelve million dollars. (*Id.* at 23.) He explained that he based the value on the price of marijuana in the area of Oklahoma, Arkansas, and Missouri, not on the cheaper price of marijuana south of those locations. (*Id.* at 24.) He testified that movant acted as "a manager" of the drug organization. (*Id.*)

Agent Megli testified about her comparison of the various ledgers and their reflection of matching amounts and some matching dates. (*Id.* at 33.) She also testified that firearms were seized from movant's residence. (*Id.* at 34.) Although she could not testify that the seized firearms were used in connection with any marijuana activity, she testified that co-defendant Cox told her about a firearm that was used in connection with such activity. (*Id.* at 37.)

10

After the government presented its evidence at sentencing, defense counsel addressed his failure to file written formal objections to the PSR.  (*Id.* at 40-43.)  He informed the Court that he and movant "concluded that he could not go forward with completing his response to the PSI in connection with a guilty plea since that had become controverted by the assertion of facts by [movant] when he asserted his innocence and sought to withdraw his plea."  (*Id.* at 40-41.)  In light of movant's continued desire to withdraw his plea, movant and his attorney "felt like . . . [movant] could not comply with the requirements to respond to the PSI and qualify for acceptance of responsibility, et cetera, without violating his Fifth Amendment rights which were still in limbo . . . since he was asserting his innocence and his right to withdraw his plea."  (*Id.* at 41.)  Defense counsel explained:

> Thus, Mackay finds himself in the position of being here before the Court, being forced to appear uncooperative or not cooperating with the dictates of the Court because he insists that he still is entitled to withdraw his plea and have his day in court, and he's here unwillingly and, we submit to the Court, unfairly.
>     We still maintain that the only proper solution in the case would be to allow Mr. Mackay to withdraw his plea.  The record of the transactions in this matter also bear an admission by the government at some point in the proceedings that that was the only option available to the defendant.

(*Id.* at 42.)  Counsel later stated:

> I'm submitting that an appropriate sentence in the case would be the same figures that were given to Mr. Mackay at the time that he entered into the plea, that a 10- to 12-year term would be in compliance with what he was told, although we respectfully urge the Court that a sentence is not proper in the case, that what should be done is that this plea should be withdrawn and Mr. Mackay allowed to proceed via a trial.

(*Id.* at 43.)

In light of the statements made by counsel, the Court gave movant an "opportunity to address the Court as to any matters that [he] would like the Court to consider or take into con-

11

sideration in this matter." (*Id.* at 43.)  Movant denied none of the statements of counsel, but instead made a lengthy explanation for why the government had breached his plea agreement and why his plea should be considered involuntary, and reiterated his request for the withdrawal of his plea.  (*See id.* at 43-60.)  He stated that he "would not have" entered into the plea agreement "under any circumstances" if he could not get specific performance regarding the forfeiture provision.  (*Id.* at 44.)  He stated that "[t]he agreement I made with them was ten years with three points off for acceptance of responsibility" and that the government indicated that he would "get out" after "about seven and a half to eight years." (*Id.*)  He also apologized to his family, the Court, and God "for even being involved in anything so haywire as this." (*Id.* at 56-57.)

The Court thereafter calculated movant's sentence under the applicable sentencing guidelines.  (*See id.* at 69-73.)  It noted that the PSR set the total offense level at forty and movant's criminal history category at III.  (*Id.* at 69.)  The Court found a base offense level of thirty-four justified because "it was reasonably foreseeable" based on the evidence presented that the amount of marijuana to be distributed in the conspiracy would exceed five thousand kilograms.  (*Id.*)  It applied a two-level firearm enhancement justified in light of "the arsenal that was assembled at the residence and office of Mr. Mackay" and a four-level enhancement for movant's leadership role justified by the evidence that he supervised and organized a conspiracy with at least four other persons. (*Id.* at 69-70.)  It found no justification, however, for enhancing the offense level for any obstruction of justice.  (*Id.*)  It declined to reduce the offense level for acceptance of responsibility, finding that despite his guilty plea, movant had "not accepted responsibility for his action and criminal behavior in this case", showed no remorse for his criminal behavior, and exhibited no intent to reform.  (*Id.*)  Based upon these calculations, the Court found the applicable sentencing range to be from 360

12

months to life imprisonment.  (*Id.*)  It sentenced movant to life imprisonment because "there is no question in the Court's mind that should the defendant be returned to the community, that he would continue to engage in the criminal behavior that is reflected in his criminal record and in the matters that have been presented to this Court."  (*Id.* at 71.)

## F.  Entry of Judgment and Subsequent Appeal

On April 10, 2000, the Court entered judgment on movant's guilty plea and sentenced him to life imprisonment.  (*See* Judgment, doc. 793.)  That same day, it granted a motion to correct sentence, (*see* Order of Apr. 10, 2000, doc. 794), and entered an amended judgment that sentenced movant to 405 months imprisonment, (*see* Am. Judgment, doc. 795).[7]  On the date of judgment, movant appealed his conviction and sentence.  (*See* Notice of Appeal, doc. 792).)  On May 28, 2002, the court of appeals considered movant's four appellate claims,[8] and affirmed his conviction.  *See United States v. Mackay*, No. 00-10380, slip op. at 1-18 (5th Cir. May 28, 2002).  On February 24, 2003, the Supreme Court denied movant's petition for writ of certiorari.  *See Mackay v. United States*, 537 U.S. 1215, 1215 (2003).

---

[7]  The government filed the motion for correction of sentence when it was alerted just after sentencing that the imposed sentence erroneously included a criminal history point for a misdemeanor conviction that had occurred more than ten years before the offense of conviction.  (*See* Mot. Correction of Sentence, doc. 791.)

[8]  Movant raised four claims on appeal:  (1) he was entitled to withdraw his guilty plea because the government breached the plea agreement by not returning all property promised to be returned; (2) the factual resume fails to list the drug quantity involved in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (3) sentencing enhancements for possession of a firearm and role in the offense were plainly erroneous because they were not alleged in the indictment nor proved beyond a reasonable doubt as required by *Apprendi*; and (4) the trial court erred in admitting at sentencing a transcript of testimony given at a related sentencing hearing.  *See United States v. Mackay*, No. 00-10380, slip op. at 7 (5th Cir. May 28, 2002).

## G. Federal Collateral Proceedings

On February 26, 2004, the Court received the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 with an accompanying memorandum in support. (*See* Mot. to Vacate at 1; Mem. Supp. at 1.) Movant claims that he received ineffective assistance of counsel during plea proceedings, at sentencing, and on appeal. (*See* Pet. Relief Pursuant to 28 U.S.C. § 2255, attached to Mot. to Vacate.) More specifically, in ten stated issues, movant raises three claims for relief under § 2255: (1) conflict of interest, (2) involuntary plea, and (3) ineffective assistance of trial and appellate counsel. (*See* Mem. Supp. at 1-56.)[9] In support of his claims, he attaches ten affidavits to his supporting memorandum.[10] (*See* Exs. E, F, J, K, L, M, N, O, P, and R, attached to Mem. Supp.) In March 2004, he also submitted affidavits from his wife and daughter. (*See* Affs. of Kris Mackay and Marley Mackay, docs. 860 and 861, [hereinafter Aff. of Wife and Aff. of Daughter].)

After the government filed its response asserting that movant's claims have no merit, (*see* Resp. at 1-15), the Court received the first of numerous motions filed by movant. Contemporaneously with these findings, the Court has ruled on these motions. By its rulings on these motions, the Court has expanded the record to include the items attached to movant's motion to expand the record (doc. 869) and to his motions to supplement authorities (docs. 882, 884, 885, 889, 894). The Court also ruled that it will consider the reply brief contained within movant's motion for leave of court to file reply (doc. 872).[11]

---

[9] Although movant numbers the pages of his supporting memorandum to page fifty-six, the memorandum skips from page forty-eight to page fifty-one. (*See* Mem. Supp. at 48-51.)

[10] Exhibits D and I, purported affidavits from movant's wife and daughter, were not attached to the memorandum in support.

[11] For purposes of these findings, the Court will hereinafter refer to the motion for leave as movant's reply, and cite to it accordingly.

14

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error.  *Id.* at 232.  Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude."  *Id.*  The cause and prejudice test applies even to allegations of fundamental constitutional error.  *Id.*  The only exception to the application of the test is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he or she is actually innocent of the crime convicted.  *Id.*  Furthermore, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  In addition, a showing of ineffective assistance of counsel satisfies the cause and prejudice standard.  *See United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

Movant pursues his claims in the context of ineffective assistance of counsel.  He also challenges the validity of his guilty plea and accompanying waivers.  In addition, he raises a conflict-of-

15

interest claim that may impact the legal standards applied to his claims of ineffective assistance of counsel.  The Court thus first considers the conflict claim.

## III.  CONFLICT OF INTEREST

Movant seeks to vacate, set aside, or correct his conviction and sentence because his trial attorney's joint representation of movant and his wife in late 1997 constituted a conflict of interest. (Mem. Supp. at 10.)  He asserts that, prior to Tatum's hiring, he had told a prosecutor that he would consider the prosecutor's offer of a "talk you walk or a reduction of sentence" if he provided testimony "against the alleged mexican [sic] marijuana source" and his former attorney, Jerry Patchen. (*Id.*)  He further asserts that Tatum later informed him that he "could not even consider cooperating with the government for fear that the Mexicans or others involved would kill or hurt [his] wife" and that such cooperation "would most certainly" entail testifying against his own wife.  (*Id.* at 11.)  He argues that whether he "would have agreed to cooperate with the government is neither here nor there" because the conflict eliminated one of his options.  (*Id.*)

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice.  *Id.* at 781-82. "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions: (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).  However, in 2002, the Supreme Court clarified

16

that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict)." *Infante,* 404 F.3d at 392. "[T]o show adverse effect, a petitioner [or movant] must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest." *Perillo v. Johnson,* 79 F.3d 441, 449 (5th Cir. 1996); *accord United States v. Villarreal,* 324 F.3d 319, 327 (5th Cir. 2003); *Beathard v. Johnson,* 177 F.3d 340, 346 (5th Cir. 1999). One such adverse effect is the failure of an attorney to explore "possible plea negotiations and the possibility of an agreement to testify for the prosecution." *Holloway v. Arkansas,* 435 U.S. 475, 490 (1978); *accord United States v. Salado,* 339 F.3d 285, 292 n.7 (5th Cir. 2003).

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina,* 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter,* 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo,* 205 F.3d at 781. The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation.

17

*See Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (*en banc*).[12] Whether a conflict of interest exists is a "highly fact-intensive" question that is dependent upon numerous "factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated. *Infante*, 404 F.3d at 392. Another factor is the movant's awareness of the potential conflict and choice to continue with his chosen counsel. *Villarreal*, 324 F.3d at 327.

In support of his conflict claim, movant submits affidavits from himself and his wife. (*See* Aff. of Robert Mackay, attached as Ex. E to Mem. Supp.; Aff. of Wife.) Movant's wife avers that she obtained representation from Craig Jett, and that although he represented her regarding her plea agreement, Tatum "completed all of the forfeiture information for both [movant] and I." (Aff. of Wife at 7.) She further avers that the government "would not accept [her] plea unless" movant cooperated. (*Id.* at 5.)

In his reply brief, movant argues that the Court found a conflict of interest on November 18, 1997, and did not cure the conflict by appointing new counsel for his wife. (Reply at 9-11.) He asserts that only appointment of new counsel for him would cure the conflict. (*Id.* at 11.) He argues that despite the appointment of new counsel for his wife, a conflict continued because Tatum jointly represented him and his wife "on the seizures and forfeiture aspects of the criminal plea agreement"; he "represented and rode heard [sic] over Mr. Jett"; he assisted in the preparation of information

---

[12] The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984) applies when a prisoner alleges a conflict of interest of a different ilk. See *Beets*, 65 F.3d at 1272.

used at his wife's sentencing; a close relationship existed between Tatum and movant's wife; and Tatum represented his wife in IRS proceedings and a civil matter involving an Oklahoma bank. (*Id.* at 9-11.) He specifically states that his "wife could not get a plea agreement if she did not convince [movant] and his attorney to plead guilty. (*Id.* at 10.) He claims that Tatum secured no cooperation agreement due to the attorney's interest in his wife's case and well-being. (*Id.* at 10-11.)

Movant attaches several documents to his motion filed in July 2005, (doc. 882), including a faxed letter dated March 30, 1998, wherein Tatum states: "My efforts in representing Bob and Kris Mackay have always been done with the highest priority directed to ethics, truth, and honesty." (*See* Ex. B attached to July 2005 Mot. Supp. Authorities [hereinafter July 2005 Ex. B].) In the same letter, although he states that he "do[es] not presume to know what Craig Jett and Kris Mackay are going to do", he indicates that movant's wife is "entitled" to certain remedies due to an alleged breach of her plea agreement by the government. (*See id.* ¶ 7.) Tatum further indicates that the government "rejected" movant's attempt to cooperate. (*Id.* ¶ 8.) He concluded by stating:

> Kris Mackay needs to receive a non-custodial sentence and Bob Mackay needs to be sentenced to no more than Mears or ten (10) years in any case. The sentencing statistics . . . simply do not justify a 25 -30 year sentence in a weed case of this magnitude and especially so with people that can provide the kind of information that Mackay has.

(*Id.* at 4.)

In a faxed letter dated November 11, 1998, Tatum states: "I made the complaint that the government has reneged on the plea agreement on behalf of Robert Mackay **only**, not Kris Mackay." (*See* Ex. C attached to July 2005 Mot. Supp. Authorities [hereinafter July 2005 Ex. C].) In a letter dated March 19, 1999, Tatum indicates that he represents movant and his wife in forfeiture pro-

ceedings, but only movant in "the criminal matter." (*See* Ex. E attached to July 2005 Mot. Supp. Authorities [hereinafter July 2005 Ex. E].)

Contrary to movant's assertions and arguments, the Court never found an actual conflict of interest. (*See* Order Memorializing Ruling at 1-2.) It merely granted movant's wife's request for separate counsel, thus finding that the *potential* conflict of interest no longer existed. (*Id.*) The fact that the Court granted that request provides no basis for finding an actual conflict of interest. Furthermore, although movant initially indicates that a conflict adversely affected his ability to cooperate with the government, Tatum's representation of movant did not close the lines of communication with the government, as shown by movant's guilty plea on January 5, 1998.

Movant claims that Tatum continued to be involved with his wife's representation in the criminal matter as well as other litigation; that Tatum secured no cooperation agreement due to the attorney's interest in his wife's case; and that his wife's plea was contingent on him pleading guilty. Affirmative governmental assertions that movant's and his wife's plea agreements were a "package deal", (*see* Order Setting Hr'g, doc. 596, at 2), support movant's claim that his wife's plea was contingent on his plea. Furthermore, movant has provided documents drafted by Tatum which definitively show that Tatum jointly represented movant and his wife in forfeiture proceedings connected to this criminal action and suggests his concern regarding the wife's criminal case. Those documents, however, specifically refute the allegation that Tatum failed to seek a cooperation agreement due to his concern for the wife's case. (*See* July 2005 Ex. B (indicating that the government had rejected movant's attempt to cooperate and continuing to argue for a ten-year sentence for someone who "can provide the kind of information that Mackay has").) An actual conflict of interest does not exist merely because movant's wife's plea was contingent on his plea or because

Tatum jointly represented movant and his wife in forfeiture proceedings and may have shown concern regarding movant's wife's criminal case.

Based on the facts before it, the Court finds that movant has shown no adverse affect on the representation he received from Tatum due to the *potential* conflict of interest.  There is no indication that Tatum possessed confidential information that was helpful to movant or his wife but harmful to the other.  Although the multiple representations related to the same criminal action, as well as related forfeiture proceedings and unrelated civil actions, the joint representation within the underlying criminal action was officially terminated after only a very brief period of time – approximately six weeks – even though documents drafted by Tatum reflect continued concern about the wife's criminal case.  Furthermore, after the Court expressed its concern regarding the joint representation, Tatum specifically indicated on movant's behalf that movant desired such arrangement.  After the government expressed its concern about the joint representation, the Court appointed independent counsel to movant and his wife so that they would be made aware of the dangers and pitfalls of such representation.  Based on such independent counseling, movant's wife opted for separate counsel, but movant expressed no desire for counsel other than Tatum.  Although movant was certainly aware of the potential conflict, he chose to continue with his selected attorney.  Until filing the instant motion to vacate, movant never indicated that a conflict of interest adversely affected the representation Tatum provided despite his several attempts to withdraw his plea based upon an alleged governmental breach of the plea agreement.  Under these circumstances, the Court finds no actual conflict of interest.

Movant, furthermore, has shown no plausible strategy or tactic that Tatum did not pursue due to the alleged conflict.  Although he claims that Tatum secured no cooperation agreement due

to the conflict, it appears that counsel sought such an agreement to no avail.  (*See* July 2005 Ex. B (indicating governmental rejection of movant's attempt to cooperate).)

In addition, although movant may argue that Tatum did not recommend proceeding to trial based on the alleged conflict and that trial was a generally plausible strategy or tactic, the evidence against movant was overwhelming.  (*See* Tr. Sentencing at 69, 71 (showing that presiding judge was so convinced that movant was a member of a drug conspiracy that distributed in excess of five thousand kilograms of marijuana that the judge initially sentenced movant to life imprisonment); Vol. II of Tr. of Sentencing of Kris Mackay, doc. 749, at 177 (showing that presiding judge indicated that Ms. Mackay received "a terrific deal . . . because there is no doubt in my mind if this case went to trial she would be facing anywhere from 15 to 25 years in prison, because there is no question in my mind a jury would find that she was member of the conspiracy, an offense that carries from ten years to life imprisonment".)  In view of this overwhelming evidence, movant has not shown that the alleged conflict caused Tatum to recommend bypassing trial in favor of pleading guilty. Although proceeding to trial is an alternative to pleading guilty in every case, a plea of guilty does not transform every potential conflict of interest into an actual conflict.  The movant must show that his attorney recommended acceptance of the plea offer instead of proceeding to trial because of the alleged conflict of interest.  The Court properly considers the strength of the government's case when determining the plausibility of proceeding to trial and considering whether the movant has shown that the alleged conflict instead caused the attorney to forego a trial.

By pleading guilty, movant successfully avoided criminal prosecution for other charged offenses, and "any other offense arising out of the conduct described in the factual resume or information that the government currently has knowledge of . . . includ[ing] violations of any

criminal tax violation." (*See* Plea Agreement at 5-6.)  He also created the potential for obtaining a reduction in offense level due to acceptance of responsibility.  In light of the strength of the government's case, these facts favor a plea of guilty in lieu of trial.  These facts cut against the argument that counsel recommended that movant plead guilty instead of proceeding to trial because of a conflict of interest.  That movant ultimately received a lengthy sentence and no reduction for acceptance of responsibility does not reduce the weight these facts play in the decision to plead guilty rather than proceeding to trial.  In other words, the ultimate sentence received does not retroactively make the actions of counsel suspect or make trial any more of a plausible alternative to pleading guilty.

Furthermore, although movant may argue that much of the evidence against him would have been suppressed had Tatum filed a motion to suppress, he has not shown that such a motion had sufficient merit to risk proceeding to trial.  He complains that the warrant affidavit contained false statements.  However, to establish that the omitted motion would have been successful had one been filed on the basis of false statements, movant must show that the government "knowingly and intentionally, or with reckless disregard for the truth" included a false statement in the warrant affidavit, and that such false statement was necessary to the finding of probable cause.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  Movant has not made that showing.  He has not shown that the government included a false statement with the requisite intent or recklessness.  In addition, despite his repeated challenges to the veracity of the warrant affidavit and numerous attempts to supplement his authorities, movant has provided no copy of the warrant affidavit in this § 2255 action so that the Court may independently determine whether any alleged false statement was necessary to finding probable cause.

For all of these reasons, movant's conflict-of-interest claim does not entitle him to relief under 28 U.S.C. § 2255 and does not alter the *Strickland* standard for considering his claims of ineffective assistance of counsel.

## IV.  VOLUNTARINESS OF GUILTY PLEA AND RELATED WAIVERS

Movant raises two matters that go directly to the voluntariness of his guilty plea.  He first claims that his guilty plea was involuntary because he accepted incorrect advice from his attorney. More specifically, he asserts that his attorney told him that (1) his sentencing exposure was limited to 151 months; (2) the government agreed not to enhance his sentence for conduct not delineated in the factual resume; and (3) "the forfeitures would go as agreed".  (Mem. Supp. at 15.)  He argues that the advice was incorrect, and that he could not have received a lengthier sentence had he proceeded to trial.  (*Id.*)  He also claims that his plea was coerced by threats, perjury, and prosecutorial misconduct that was not prevented by his attorney.  (*Id.* at 29, 36.)  Furthermore, within the context of his claimed ineffective assistance regarding the withdrawal of his plea, movant argues that the government's breach of the plea agreement makes his plea unknowing and unintelligent.  (*Id.* at 22.) He asserts that he would not have pled guilty had he known the "government was not going to perform specific performance."  (*Id.*)

"When a defendant pleads guilty he or she . . . forgoes not only a fair trial, but also other accompanying constitutional guarantees."  *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *accord Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). For example, with an informed and voluntary waiver, a defendant may waive his right to pursue claims in a motion to vacate.  *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam).  Because a plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty

plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelli-
gent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."
*Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).   Ordinarily, a
waiver is entered knowingly, intelligently, and with sufficient awareness when "the defendant fully
understands the nature of the right and how it would likely apply in general in the circumstances –
even though the defendant may not know the specific detailed consequences of invoking it." *Id.* at
630.

    With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does
not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty
plea, with its accompanying waiver of various constitutional rights, despite various forms of misappre-
hension under which a defendant might labor." *Id.*   Although "the more information the defendant
has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that
decision will likely be . . . the Constitution does not require the prosecutor to share all useful infor-
mation with the defendant." *Id.* at 629.

    Nevertheless, a plea induced by threats, improper promises, deception, or misrepresentation
is not voluntary.   *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).   A plea qualifies as
intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the
charge against him, the first and most universally recognized requirement of due process." *Bousley*,
523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).   In determining whether a
plea is intelligent, "the critical issue is whether the defendant understood the nature and substance
of the charges against him, and not necessarily whether he understood their technical legal effect."
*Taylor*, 933 F.2d at 329.

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[13] *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

---

[13] Rule 11 has undergone various changes over the years. Fed. R. Civ. P. 11 (West 2006) (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (recognizing the evolution of the rule over the past three decades). As it existed when movant pled guilty in January 1998, Rule 11 contained no requirement that the courts inform the defendant of the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence. *See* Fed. R. Crim. P. 11(c) (West 1999).

> When examining the totality of the circumstances, a reviewing court should "con-
> sider the complexity of the charge, the defendant's level of intelligence, age and edu-
> cation, whether the defendant was represented by counsel, the judge's inquiry during
> the plea hearing and the defendant's statements, as well as the evidence proffered by
> the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted).  Courts considering

challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the

defendant's understanding of the charges, and a realistic understanding of the consequences of a

guilty plea." *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty

plea means that the defendant knows the "the immediate and automatic consequences of that plea

such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).

"If a defendant understands the charges against him, understands the consequences of a guilty plea,

and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be

upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified

on other grounds*, 646 F.2d 902 (5th Cir. 1981).

　　　In addition, prisoners who challenge their guilty pleas on collateral review must overcome

a "strong presumption of verity" accorded "solemn declarations" made in open court.  *See Blackledge

v. Allison*, 431 U.S. 63, 73-74 (1977).  Prisoners must also overcome the presumption of regularity

and "great weight" accorded court records.  *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994)

(holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when

determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d

1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v.

Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presump-

tion of regularity").  Nevertheless, when "the defendant offers specific factual allegations supported

by the affidavit of a reliable third person, he is entitled to a hearing on his allegations" even when

his allegations are specifically belied by his sworn testimony at a plea hearing.  *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam).

With these principles in mind, the Court examines the voluntariness of movant's plea in light of his allegations of ineffective assistance of counsel, coercion, and breach of his plea agreement. Because the latter two allegations impact the alleged ineffective assistance of counsel, the Court first examines the alleged breach and coercion.

## A.  Coerced Plea

Movant claims that his plea was coerced by threats, perjury, and prosecutorial misconduct that was not prevented by his attorney.  (Mem. Supp. at 29-36.)  More specifically, he contends that the government suppressed evidence regarding the credibility and character of its key witness, Mears, *i.e.*, that Mears had "breached his plea agreement and cooperation agreement by refusing to answer questions" regarding theft allegations against his nephew and that Mears "refused" a polygraph test. (*Id.* at 30-31.)  He asserts that, by refusing to cooperate with an investigation of his nephew, Mears committed perjury and obstructed justice.  (*Id.* at 31.)  He contends that Mears' cooperation agreement requires "truthful, complete information regarding criminal activity of which he is aware of, or associated with governments [sic] ongoing investigation." (*Id.*)  He further contends that by committing perjury; obstructing justice; tampering with witnesses; and threatening to murder his family, other co-defendants and witnesses, Mears blatantly breached his plea and cooperation agreements. (*Id.*)  He also contends that the fact that Mears has given false or misleading or materially incomplete information is relevant to his credibility and character.  (*Id.*)  In a supplemental motion, he contends that Mears, acting as a governmental informant or agent, threatened to murder defendant and others if movant "took the stand or called any witnesses on his behalf." (Mot. Supp. Auth-

orities, doc. 881, at 2.)  A letter from his attorney to the government supports the allegation that Mears threatened movant.  (*See* July 2005 Ex. B ¶ 11.)

In this instance, movant appears to allege coercion on two fronts – (1) by the government based upon a failure to disclose material impeachment evidence regarding Mears and (2) from Mears based upon an alleged threat to kill movant or his family.  The Court separately addresses these issues.

### 1.  *Suppression of Evidence*

In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court specifically considered "whether the Fifth and Sixth Amendments require federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose impeachment information relating to any informants or other witnesses", and found that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. at 625, 633.  In light of *Ruiz*, the alleged failure of the government to disclose evidence related to the credibility and character of one of its witnesses has no potential impact on the voluntariness of movant's plea.[14]

---

[14]  The Court notes that, prior to *Ruiz*, the Fifth Circuit had recognized that the Supreme Court had not extended the *Brady* disclosure requirement to circumstances where the criminal defendant had pled guilty.  *See Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000); *Matthew v. Johnson,* 201 F.3d 353, 360-64 (5th Cir. 2000).  As explained in *Orman*, "*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty." 228 F.3d at 617; *accord Ruiz*, 536 U.S. at 634 (Thomas, J., concurring).  "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation." *Matthew*, 201 F.3d at 361-62.  *Orman*, *Matthew*, and the concurring opinion in *Ruiz* support a finding that the *Brady* disclosure requirement simply does not apply when criminal proceedings conclude with the entry of a guilty plea.  Although *Ruiz* seems to leave open the possibility of some disclosure requirement even in the context of a guilty plea, *see* 536 U.S. at 630 (suggesting that there is "critical information of which the defendant must always be aware prior to pleading guilty"), the current case presents no occasion for this Court to explore that possibility.

### 2. *Threat from Mears*

Although movant now contends that a threat from Mears coerced him to plead guilty, he affirmatively indicated on the record that "[o]ther than the plea agreement in this case," no one had promised him "anything or threatened [him] in any way to get [him] to plead guilty." (Tr. Re-arraignment at 17.) His current allegations of coercion do not overcome his affirmative statement at his plea hearing. He provides no affidavit from a reliable third person that he pled guilty due to Mears' threat.

Furthermore, despite the reference to Mears' threat, movant does not connect the threat to his decision to plead guilty. At sentencing, movant made a lengthy statement to the Court in which he made several allegations of threats. (*See* Tr. Sentencing II at 44 ("this plea is a product of threats"); 52 (the plea agreement was "threatened, coerced" . . . "I've got letters [from the prosecutors] . . . where they threatened to file income tax and gun charges and several other charges on me if I don't make this plea or if I back out from this plea. So, in other words, they are threatening me, either you do this or we're going to do this. That's not a voluntary and knowing plea."); 55 ("My plea is definitely involuntary, it's coerced, and it's threatened. I'm being mentally and physically forced to be here."); 58-59 ("And I guess that's about all I have to say. And I just wish that you would allow me to withdraw my plea. It's involuntary. It's under duress of threat against me and my family. . . . And another thing, the man [(Mears)] calls me and threatens my life, threatens my family's life.").) In his statement to the Court, which encompasses seventeen pages of transcript, movant does not focus on the threat from Mears as a basis to withdraw his plea, but merely mentions it as an aside at the end. (*See id.* at 43-60.) Other than that brief mention, movant did not attempt to withdraw his plea based upon any death threat from Mears. (*See generally* Mot. Withdraw Guilty Plea at 1-2; Tr. Mot. Withdraw at 2-24; Second Tr. Mot. Withdraw at 2-29; Mot. Recon. at 1-4; Tr.

Sentencing Hr'g at 2-25.)  From the record in this case there is no basis for finding that any threat from Mears coerced movant to plead guilty against his will.  Conclusory allegations of coercion do not suffice to render a guilty plea involuntary.  *United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. 1995); *Carter v. Thomas*, 85 F.3d 640, 1996 WL 262892, at *3 (10th Cir. 1996) (Table, text on Westlaw); *Bargas v. Dretke*, No. 2:00-CV-0376, 2003 WL 22840012, at *6 (N.D. Tex. Nov. 24, 2003) (report and recommendation adopted by District Court).  Conclusory allegations of coercion are insufficient to refute sworn testimony given during a plea hearing.  *United States v. Richardson*, 133 Fed. App'x 220, 222 (6th Cir. 2005).

For all of these reasons, movant has not overcome the presumption that he truthfully stated at the plea hearing that no threat caused him to plead guilty.

## B. Breach of Plea Agreement

Movant also claims that a breach of his plea agreement by the government makes his plea involuntary.  (*See* Mem. Supp. at 22.)  He contends that the government failed to return certain property as promised in the plea agreement.  (*Id.*)  He further argues that application of firearm and organizer enhancements as well as additional relevant conduct constituted a breach of the government's agreement not to prosecute him for any other offense arising out of the conduct set forth in the factual resume or from other information known to the government.  (*See id.* at 24-26.)

With respect to the claim concerning the failure to return certain property, the Fifth Circuit specifically found that the government substantially complied with the plea agreement, and thus did not breach such agreement.  *See United States v. Mackay*, No. 00-10380, slip op. at 8-11 (5th Cir. May 28, 2002).  In view of that finding, that alleged breach of the plea agreement provides no basis for finding movant's plea involuntary.  Furthermore, to the extent there was an oral promise by the

government that "the forfeitures would go as agreed", the finding by the Fifth Circuit shows no breach of such promise.

With respect to the alleged breach of the plea agreement resulting from the application of enhancements or relevant conduct, the Court finds no breach of the agreement because the agreement does not prohibit the Court from applying those enhancements or sentencing movant based upon relevant conduct. Additionally, a prosecutor's agreement not to prosecute does not prohibit the Court from using relevant conduct or enhancements to increase a defendant's sentence in accordance with the sentencing guidelines. The enhancement of movant's sentence and the Court's consideration of relevant conduct constitutes no breach of the plea agreement. Consequently, such alleged breaches provide no basis for finding movant's plea rendered involuntary.

## C. Unfulfilled Promises

Movant also claims that he pled guilty based upon erroneous statements from his attorney that his sentencing exposure was limited to 151 months; the government agreed not to enhance his sentence for conduct not set forth in the factual resume; and "the forfeitures would go as agreed". (*Id.* at 15.) Because movant generally characterizes such statements as erroneous advice, rather than as promises, the Court considers such claims in more detail in the next section when it considers whether alleged ineffective assistance of counsel rendered movant's plea involuntary. In his reply brief, however, movant characterizes the statements of counsel as "bad advice", and argues that he "was led into making an involuntary plea by Mr. Tatums [sic] false promises." (Reply at 12.) The Court thus considers whether these alleged statements from counsel might be construed as unfulfilled promises.

A plea may be rendered involuntary due to an unfulfilled promise. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "[W]hen a plea rests in any significant degree on a prom-

ise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Nevertheless, when an alleged unfulfilled promise does not appear in the written plea agreement and such promise is inconsistent with representations made in open court, the defendant faces a heavy burden to obtain relief under 28 U.S.C. § 2255 on a claimed involuntary plea. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (relying on the presumption in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) that "'[s]olemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings'"); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (presumption of regularity of court documents and the great weight accorded to them by the courts); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (same); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (same).

As to the other potentially alleged promises set forth in the context of ineffective assistance of counsel, the Court finds no evidence in the record that promises were made of a 151-month maximum sentence exposure or that movant's sentence would not be enhanced for conduct outside the factual resume. The plea agreement entered into by movant contains no such promises, and in fact, is entirely inconsistent with such promises. Not only does the plea agreement set forth the range of punishment at ten years to life imprisonment, it specifically indicates that "[t]he sentence in this case will be imposed by the Court" and further states:

> There is no agreement as to what the sentence will be. Sentencing is pursuant to the Sentencing Reform Act of 1984, making the Sentencing Guidelines applicable. The defendant has reviewed the application of the guidelines with his attorney, but understands that no one can predict with certainty what guideline range will be applicable in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. . . . The defendant understands that the applicable guideline range merely sets a presumptively appropriate sentencing range and the District Judge in this case has authority to impose a sentence above, within or below the range. It is expressly understood that the

United States Attorney may make any argument to the District Court supported by the facts of this case concerning the proper application of the Sentencing Reform Act and the Sentencing Guidelines.

(Plea Agreement at 2-3.)   The plea agreement later states:   "This plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement.   There have been no representations or promises from anyone as to what sentence this Court will impose."   (*Id.* at 7-8.)

Furthermore, after the plea agreement was summarized at the plea hearing, movant represented to the Court that he recalled signing the agreement after discussing it with his attorney, and specifically indicated that he understood "all of the provisions of th[e] plea agreement."   (Tr. Re-arraignment at 14.)   He also specifically indicated that he understood that his offense carried a range of punishment of ten years to life imprisonment, and that the Court "could set [his] sentence anywhere with the range provided by law", although the Court would consider the sentencing guidelines.   (*Id.* at 9.)   He further indicated that, "[o]ther than the plea agreement in this case", no one had promised him "anything or threatened [him] in any way to get [him] to plead guilty."   (*Id.* at 17.)   He indicated that no one had promised him what sentence the Court would impose.   (*Id.*)   These sworn representations directly contradict his claims of unfulfilled promises.

To support his claims, movant provides affidavits from his former attorneys Tatum and Patchen (who occasionally communicated with movant and Tatum regarding his federal criminal action).[15]   (*See* Aff. Tatum, attached as Ex. F to Mem. Supp.; Aff. Patchen, attached as Ex. B to Mot.

---

[15] Movant also attaches other affidavits to his memorandum in support:  his own affidavit (Ex. E) which, among other things, contests the validity of an unspecified probable cause affidavit, sets forth various events related to his represented status and proposed offers or deals from the government, and specifically indicates that the government "agreed to 1000 kilo only plea and no other Conduct or information was to be used to enhance [his] sentence arising out of the factual resume"; several affidavits (Exs. J, K, M, N, and R) which merely address the truth of matters asserted in affidavits related to probable cause; affidavits of friends Carl Phillips (Ex. O) and Linda Johnson (Ex. L) which indicate that movant told them that he had accepted a ten year plea agreement offer; and an affidavit from his father (Ex. P) which also indicates that movant told him that he was pleading guilty on the advice of his attorney and would "be sentenced to ten (10) years

Supp. Authorities, doc. 894.)  Neither affidavit, however, states that any promise was made by defense counsel, the prosecutor, or the Court as to what sentence would be imposed or that the Court would not enhance his sentence.

Tatum avers that he told movant "that using the Sentencing Guidelines Manual his exposure [wa]s limited to 121-151 months for the stipulated amount of drugs." (Aff. of Tatum at 1.)  He further avers that "[t]his is also the exposure represented by the government." (*Id.*)  He also avers that the government agreed to drop an enhancement under 21 U.S.C. § 851 and agreed that movant "would not be enhanced for any other conduct." (*Id.* at 2.)  His affidavit, however, reveals that he deleted a statement that the government "agreed these terms would prevent the use of any other relevant conduct." (*See id.*)  He avers that the government told movant "that his only exposure would be 1000 kilos of marijuana and nothing else, and that the property agreement would turn out as promised in the contract." (*Id.*)  He avers that he told movant "that the only reason to make this plea was to get the benefit of the government's promise to limit his exposure to at least 1000 kilograms of marijuana and no other conduct and, to get the property items returned as he was not pleading to a lesser charge." (*Id.* at 2-3.)

---

in Federal Prison".

Movant later provided affidavits from his wife (doc. 860) and daughter (doc. 861) to support his claims.  Among other things, his wife avers that, at or near their "indictment hearing", Mr. Patchen informed her and movant that Assistant United States Attorney Joe Wilson "suggested that Robert would receive a maximum of 10 years in federal prison". (Aff. of Wife at 2.)  She further avers that she "listened to the details of the proposed plea agreement" during discussions with Tatum, "the offer stated that [movant] would be charged with a 1000 kilogram plea with no other enhancements", and "[i]t was also discussed that no other conduct or information would be used to sentence [movant], arising out of the factual resume". (*Id.* at 6.)  Although the daughter primarily makes averments regarding the probable cause affidavit, she also avers that "Mr. Tatum reassured my mother, father, younger brother and myself that the plea agreement was for exposure to 1000 kilograms and that the sentence was going to be between 121-151 months." (Aff. of Daughter at 5.)

Mr. Wilson's alleged suggestion of a ten-year maximum sentence to movant's first attorney during plea negotiations at the beginning of the case does not equate to any promise.  Like the attorney affidavits, neither the wife's nor the daughter's affidavit reveals any promise by defense counsel, the prosecutor, or the Court as to what sentence would be imposed or that the Court would not enhance his sentence.  For the reasons discussed in the body, Tatum's erroneous estimation that movant's sentence would be between 121 and 151 months does not equate to a promise.

Patchen merely avers that movant had indicated to him that the government had offered a ten-year deal and that movant "earnestly believed that he had a 10 year deal" and "believed his sentence under the agreement with the government would not exceed 10 years." (Aff. Patchen at 2.) Patchen further avers that Tatum represented to him that movant's "sentence would not exceed 10 years based on the plea agreement" and expressed his "belief that his analysis placed [movant] in a 5 or 6 year range." (*Id.*) Patchen indicates that he recalled "thinking that Mr. Tatum had a very unrealistic and confused understanding of the Federal Sentencing Guidelines." (*Id.*)

Movant also provides other documents relevant to his claims. By letter dated March 30, 1998, Tatum informed the government:

> Bob Mackay is medically disabled due to mine incurred injuries requiring daily medication. To seek to impose a sentence on him that is more than three (3) times greater than any other sentence in the case or greater than that received by Mears is patently unjust and unfair. As a practical matter, the threat of any sentence greater than ten (10) years simply doesn't present much of a threat to Mr. Mackay. If he cannot receive a sentence, which he has some expectancy of being able to serve, then the threat of added time simply loses its threat.

(*See* July 2005 Ex. B ¶ 13.) He later stated: "Bob Mackay needs to be sentenced to no more than Mears or ten (10) years in any case. The sentencing statistics . . . simply do not justify a 25-30 year sentence in a weed case of this magnitude . . .."[16] (*Id.* at 4.) Tatum, however does not indicate that the parties ever agreed to a ten-year sentence. (*See generally id.*) By letter dated November 11, 1998, Tatum informed the government that movant "requested" that he "relay to you that the threat of a life sentence is no greater than what you are proposing to give him." (*See* July 2005 Ex. C.)

Although Tatum avers that the government agreed that movant "would not be enhanced" for any conduct not included in the factual resume, he specifically deleted a statement in his affidavit that the government had "agreed these terms would prevent the use of any other relevant conduct."

---

[16] Mears died before the Court sentenced him, and the indictment against him was thus dismissed.

(*Id.* at 2.)  Such deletion indicates no governmental promise concerning the use of relevant conduct in calculating movant's sentence – an indication precisely in line with the plea agreement entered in this case.

At sentencing furthermore, Tatum did not argue about any promise by the government regarding movant's sentencing exposure or enhancement of his sentence.  He instead "submitt[ed] that an appropriate sentence in the case would be the same figures that were given to Mr. Mackay at the time that he entered into the plea, that a 10- to 12-year term would be in compliance with what he was told."  (Tr. Sentencing II at 43.)  If counsel believed that there was some binding promise as to the sentence that movant would receive, he would certainly have argued it more strongly at sentencing.  The Court notes, furthermore, that although movant received the PSR in this case in early 1998, and saw the recommended calculation of his sentence, (*see* Mem. Supp. at 3), he did not argue any promise concerning a particular sentence range or enhancements, only the promise related to return of property in (1) his March 30, 1998 motion to withdraw his plea; (2) at the April 30, 1998 or December 17, 1998 hearings on such motion; (3) in his December 17, 1998 notice of speedy trial violation; (4) in his January 11, 1999 motion for reconsideration of the ruling on his motion to withdraw plea; or (5) at the April 19, 1999 sentencing hearing that was stayed. (*See generally* Mot. Withdraw Guilty Plea; Tr. Mot. Withdraw; Second Tr. Mot. Withdraw; Notice of Speedy Trial Rights Violation; Mot. Recon; Tr. Sentencing Hr'g.)

Movant's unsupported allegation of a "false promise" in his reply brief is clearly belied by the record; accordingly, the Court finds no promise of a 151-month maximum sentence exposure and no promise that movant's sentence would not be enhanced for conduct outside the factual resume. Furthermore, for movant to obtain relief under § 2255 "on the basis of alleged promises" that are inconsistent with representations made in open court at the time of the plea or with statements

made in a signed court document, movant must "prov[e] (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Movant has not carried that burden. He has not shown that any statement of his attorney constitutes a promise. He has not shown that the government made any promise outside the plea agreement. He has not proved the exact terms of any alleged promise not contained within the plea agreement.

In addition, a defendant cannot ordinarily "rely on the promise of the prosecutor, who has no authority to make sentencing promises, or on the inaccurate representations of an overzealous attorney." *See United States v. Frontero*, 452 F.2d 406, 411 (5th Cir. 1971) (citations omitted). To destroy the voluntariness of a plea in the context of an alleged bargain, the defendant "must have reasonable ground for assuming that the bargain would be consummated" and the defense attorney must at least "assert the existence of the bargain and the events leading to its alleged formation." *Frontero*, 452 F.2d at 411-12. In the absence of

> some indication, even if that indication is only in the form of the insistence of defense counsel at a hearing on a motion to withdraw the guilty plea, that a "bargain" was made and that there was a reasonable basis for reliance on the bargain and that the "bargain" destroyed voluntariness, this Court would have to be clairvoyant to find involuntariness from a silent record.

*Id.* at 412.

For reasons already discussed, *i.e.*, no assertion by Tatum of the existence of a promise of a sentence not to exceed 151 months and no insistence of a breached bargain by Tatum at any point other than the alleged breach for failure to return property, the Court finds that Tatum has not asserted the existence of any bargain for a ten to twelve year sentence. In addition, although he asserts the existence of a promise by the government to limit movant's sentencing "exposure to at

least 1000 kilograms of marijuana and no other conduct", he has not provided the events leading to the alleged formation of such promise. Moreover, because the alleged promises do not promise anything with respect to how the Court would sentence movant, there is no reasonable basis for reliance on such promises. There is no reasonable ground for movant to assume that any promise would be consummated by a sentence of 151 months or less.

For all of these reasons, the Court finds no promise of a 151-month maximum sentence exposure and no promise that movant's sentence would not be enhanced for conduct outside the factual resume. The Court also finds no basis for reasonably relying on any alleged promise. The Court finds no unfulfilled promise that renders movant's guilty plea involuntary. The Court thus considers the allegations in the context of ineffective assistance of counsel.

**D.  Ineffective Assistance of Counsel**

Movant claims that ineffective assistance of counsel renders his plea involuntary. As previously mentioned, he asserts that he relied on erroneous statements from his attorney that (1) his sentencing exposure was limited to 151 months imprisonment; (2) the government had agreed not to enhance his sentence for conduct not set forth in the factual resume; and (3) "the forfeitures would go as agreed". (Mem. Supp. at 15.) He also claims that his attorney allowed him to be coerced into pleading guilty. (*Id.* at 29, 36.) In support of his ineffective assistance claims, movant provides the affidavits and letters discussed in the previous section. (*See* Aff. Tatum; Aff. Patchen; July 2005 Exs. B and C.)

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, "an erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." *Beckham v. Wainwright*,

639 F.2d 262, 265 (5th Cir. 1981).  An attorney's "good faith but erroneous prediction of a sentence

. . . does not render the guilty plea involuntary." *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir.

1975), *accord United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance

on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea invol-

untary").  As noted in *Daniel v. Cockrell*, 283 F.3d 697 (5th Cir. 2002),[17]

> [a] guilty plea is not rendered involuntary by the defendant's mere subjective under-
> standing that he would receive a lesser sentence.  In other words, if the defendant's
> expectation of a lesser sentence did not result from a promise or guarantee by the
> court, the prosecutor or defense counsel, the guilty plea stands.  Likewise, a guilty
> plea is not rendered involuntary because the defendant's misunderstanding was based
> on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

283 F.3d at 703.

To successfully state a claim of ineffective assistance of counsel, the prisoner must demon-

strate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced

his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test ap-

plies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea.

*Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  "[I]n a guilty plea scenario, a [prisoner] must prove not

only that his attorney actually erred, but also that he would not have pled guilty but for the error."

*See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's per-

formance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in

any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's per-

formance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct

---

[17] The Court does not cite *Daniels* for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred.  *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58.  To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*  Even when an attorney erroneously estimates his client's potential sentence, the defendant must satisfy this requirement. *Stumpf*, 827 F.2d at 1030.  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

In this instance, movant alleges that his attorney allowed him to be coerced into pleading guilty and provided erroneous information to him regarding (1) his maximum sentencing exposure; (2) a governmental agreement related to the enhancement of his sentence; and (3) forfeitures. Because the Court has already found no basis for finding that movant was coerced into pleading guilty, it finds no deficiency of counsel in that respect.  Furthermore, with respect to the alleged erroneous information related to forfeitures, the Court finds that the government substantially complied with the plea agreement, and thus the forfeitures did essentially go as agreed.  The alleged erroneous information regarding forfeitures thus provides no basis for finding that counsel provided deficient representation.

With respect to the alleged misinformation regarding movant's maximum sentencing exposure and the government's agreement regarding enhancement, the Court finds that such alleged mis-

information does not render movant's plea involuntary under the facts of this case.  Although movant provides affidavits from two prior attorneys and others, the Court has found that no affidavit reveals any promise of a particular sentence.  While Tatum appears to have failed to take into account potential relevant conduct beyond the amount to which movant admitted in the factual resume or otherwise erroneously calculated movant's sentencing exposure under the sentencing guidelines, neither affidavit reveals a promise by counsel, the prosecutor, or the Court that movant would be sentenced within any particular sentencing range.  The alleged misinformation appears to stem from confusion regarding the difference between enhancement and relevant conduct.  Nevertheless, the proffered affidavits undoubtedly reveal a great disparity between the erroneously estimated sentence (121 to 151 months) and the actual sentencing range under the guidelines (324 to 405 months).  Such a significant miscalculation may constitute deficient representation by counsel.  *See United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (finding, in the context of a definitive statement by the attorney as to the maximum exposure the defendant faced should he proceed to trial that "[a]n attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to trial"); *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995) (finding that an attorney performs deficiently when he advises his client that the maximum sentence he faces at trial is twenty years, although in actuality the maximum sentence is ninety-nine years); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981) (finding that an attorney performs deficiently when he advises a client to withdraw a plea pursuant under which the client is assured a five-year sentence based upon mistaken information conveyed that the maximum sentence to be imposed upon a guilty verdict at trial would remain five years, but the client received a fifty-year

sentence). For purposes of this § 2255 action, the Court will assume without definitively deciding that Tatum provided deficient representation.

Deficient representation standing alone, however, is insufficient to obtain relief on an ineffective-assistance-of-counsel claim. *Strickland* requires both a deficiency of counsel and resulting prejudice. In this case, even assuming deficiency for purposes of the instant § 2255 action, the alleged misinformation does not amount to ineffective assistance of counsel in light of movant's affirmative statements at rearraignment and the specific admonitions of the Court to him. Movant has shown no reasonable probability that, at the time of his plea, he would have insisted on proceeding to trial in the absence of the alleged erroneous advice of counsel. Movant was specifically advised that the count to which he was pleading guilty carried a maximum sentence of life imprisonment. Movant stated that he understood the available range of punishment. Movant, furthermore, stated that he understood the charge against him and stipulated to the truth and correctness of all the facts contained in the factual resume he signed. He specifically stated that no one made him any promises not contained within the plea agreement. Despite all of these specific admonitions from the Court, movant persisted with his guilty plea. He makes no allegation that his attorney advised him to lie during the plea hearing, and the submitted affidavit from his attorney provides no basis for finding any such advice. Movant merely states that his plea "hearing was confusion [sic] and mistake and misunderstanding, no sense could be made of the . . . hearing." (Mem. Supp. at 16.) No such confusion is apparent from the transcript, however.

Regardless of what his attorney informed him prior to his plea, movant was advised through both the plea agreement and the plea colloquy that the statutory maximum sentence for the charged offense was life imprisonment. That movant "neither refused to enter his plea nor voiced any objection when confronted with this information precludes him from arguing that he pled guilty in

reliance upon some alternative characterization of his exposure given to him by his counsel." *United States v. Bjorkman*, 270 F.3d 482, 503 (7th Cir. 2001). Given that movant knew that the Court was charged with sentencing him within the statutory range of punishment up to life imprisonment, that the plea agreement contained no promise of a sentence within a specific range of punishment, and that he swore in open court that there were no promises outside the plea agreement, he has not shown a reasonable probability that, but for the alleged misinformation from counsel, he would not have pleaded guilty and would have insisted on going to trial. *See United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987). Other courts have likewise found no prejudice under similar facts. *See, e.g., United States v. Riojas*, Nos. CR. A. H-95-142-1, CIV. A. H-05-88, 2007 WL 38280, at *17-19 (S.D. Tex. Jan. 4, 2007) (recommendation of magistrate judge, not yet accepted by the District Court, that movant failed to show prejudice even though he pled guilty on advice of counsel that he would face a thirteen- to fifteen-year sentence with a twenty-year maximum but received a life sentence instead).

The alleged deficiencies of counsel do not invalidate movant's plea in this case. Movant claims that his attorney gave him erroneous or misinformation regarding his maximum exposure under the guidelines. He does not generally characterize the misinformation as a promise, and the Court has, as fully discussed the previous section, found no promise of a specific sentence or maximum sentence. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose,

the district courts properly deny relief for lack of prejudice.  *United States v. Ritter*, 93 Fed. App'x 402, 404-05 (3d Cir. 2004).  Movant alleges here that his attorney misinformed him about his maximum sentencing exposure under the sentencing guidelines, but an erroneous estimation of the guidelines does not entitle movant to relief.  *See United States v. Cruz-Barcena*, No. 2:03-CR-0044(01), unpub. op. at 4-5 (N.D. Tex. July 21, 2005) (report and recommendation), *adopted by* unpub. order (N.D. Tex. Aug. 10, 2005).[18]

Movant points to the disparity between the range of punishment estimated by counsel and his actual sentence.  Because the Court sentenced movant at the top of the sentencing guideline range ultimately determined to be applicable, movant argues, he could not have received a lengthier sentence had he proceeded to trial.  Such argument is a classic case of using hindsight as a reason for invalidating a plea, however.  The Court must examine the situation at the time movant pled guilty to determine whether the defendant entered the plea voluntarily.  Movant's argument ignores the sentences that he might have received had the government not agreed to drop other pending charges and to forego other potential charges, or the result of any additional investigation in prep- aration for trial.  Nor does it take into account the potential reduction for acceptance of responsi- bility (for which he would have been eligible had he not repeatedly attempted to withdraw his plea and maintained his innocence thereafter) and cooperation with the government.

The facts of this case are distinguishable from *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) in that movant has provided no affidavit from a reliable third party that supports a finding

---

[18]  Like *Cruz-Barcena*, this case is distinguishable from *United States v. Herrera*, 412 F.3d 577 (5th Cir. 2005) and *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) because those cases "involved allegations that counsel misadvised the defendants of the maximum sentence he faced if he <u>went to trial</u>" and because the "misadvice" in those cases "was not merely an estimation or prediction of sentence but, instead, was a definitive statement as to the maximum exposure each defendant faced <u>at trial</u>."  *See Cruz-Barcena*, No. 2:03-CR-0044(01), unpub. op. at 5 n.2.  When a case involves a guilty plea, the Court has the opportunity to correct any misinformation regarding sentencing exposure when it conducts the plea colloquy.

that his attorney improperly exerted pressure on him, misrepresented material facts, and withheld information in order to induce a plea of guilty.[19]  Movant's own affidavit does not suffice.  The affidavits of his father and two friends are based upon what movant told them rather than any first-hand knowledge of the plea negotiations, and thus likewise do not suffice.  The affidavits from his wife, daughter, Tatum, and Patchen do not go far enough.  No affidavit shows that Tatum improperly exerted pressure on movant to plead guilty.  No affidavit shows that Tatum made any intentional misrepresentations so as to induce movant's plea.  No affidavit shows that Tatum intentionally provided erroneous information or withheld information so as to induce a plea.

The Tatum affidavit shows an erroneous estimation of the sentence to be imposed under the sentencing guidelines, but contains no definitive statement or promise that movant would receive a specific sentence or a sentence within a specific range.  That affidavit also shows erroneous information regarding an alleged agreement by the government not to enhance movant's sentence for any conduct not set forth in the factual resume.  Nevertheless, the written plea agreement and in-court colloquy negates all of the alleged misinformation.  "Whatever counsel had told [movant], clearly there was no prejudice because [movant] was fully advised at the time of the taking of the plea that the District Court was not party to an agreement or promise of any kind."  *United States v. Ritter*, 93 Fed. App'x 402, 405 (3d Cir. 2004).

In conclusion, the Court finds based on the totality of the circumstances that movant voluntarily and knowingly entered a plea of guilty to Count 1 of the superseding indictment against him.

---

[19] *Sanderson* involves a third-party affidavit from an attorney who was present during the relevant conversation between attorney and client.  595 F.2d at 1021.  That proffered affidavit supported the defendant's allegation that defense counsel "improperly exerted pressure on defendant, misrepresented material facts, and withheld information in order to induce a plea of guilty."  *Id.*  The Fifth Circuit found that "in cases such as the present one, where the defendant offers specific factual allegations supported by the affidavit of a reliable third person, he is entitled to a hearing on his allegations."  *Id.* (footnoted omitted).

The Court further finds that no unfulfilled promise, breach of the plea agreement, coercion, or ineffective assistance of counsel rendered his plea involuntary.

## E. <u>Waiver</u>

Because movant voluntarily pled guilty, the Court further finds that he voluntarily waived his right to appeal as set forth in his plea agreement. By his informed and voluntary waiver of post-conviction relief, movant is precluded from pursuing claims in this § 2255 action except for those claims that he specifically reserved for purposes of appeal and collateral attacks. *See United States v. McKinney*, 406 F.3d 744, 746 & n.2 (5th Cir. 2005) (holding that "[a] defendant may waive his statutory right to appeal if the waiver is knowing and voluntary"); *United States v. Baymon*, 312 F.3d 725, 729 (5th Cir. 2002) (same); *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam); *United States v. Melancon*, 972 F.2d 566, 567-68 (5th Cir. 1992). Furthermore, once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In this instance, movant reserved the right to appeal or collaterally challenge (a) any punishment imposed in excess of a statutory maximum; (b) any arithmetic error at sentencing, and (c)

any "non-frivolous claim of ineffective assistance of counsel." (Plea Agreement at 6-7.) The claims raised in this action do not fall within reserved categories (a) or (b).[20] Consequently, his informed and voluntary waiver precludes movant from pursing any claim other than his claims of ineffective assistance of counsel. As discussed in more detail *infra*, even those claims, however, may be waived by his intelligent and voluntary guilty plea.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims that he received ineffective assistance of counsel (A) before he pled guilty; (B) during his attempt to withdraw his plea; (C) at sentencing; and (D) on appeal. (*See* Mem. Supp. at 1-2, 15-56.)

### A.  Pre-plea Ineffective Assistance Claims

Movant claims that his trial attorney rendered ineffective assistance when he (1) failed to file a motion to suppress; (2) failed to advise movant regarding the facts and law thus rendering his plea involuntary; and (3) allowed him to be coerced into pleading guilty. (*Id.* at 1-2, 15-16, and 36.)

---

[20] In various filings with the Court, movant cites *Blakely v. Washington*, 542 U.S. 296 (2004) for the proposition "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (*See, e.g.*, Proposed Am. Mot. Vacate at 5 (quoting 542 U.S. at 303 (emphasis in original Supreme Court decision), attached to Mot. Leave to Amend.; Mot. Supp. Authorities (doc. 873).)

Contrary to movant's arguments, the statutory maximum sentence for the drug conspiracy to which he pled guilty is life imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846 (the combination of these statutes provide a statutory maximum sentence of life imprisonment for conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana). In the factual resume, movant admitted that he "knowingly conspired with two or more persons to possess with intent to distribute and to distribute marijuana." (Factual Resume at 1.) He also admitted that the conspiracy involved "at least 1000 kilograms of marijuana." (*Id.* at 2.) Movant was thus sentenced within the statutory maximum sentence regardless of the enhancements used by the Court to determine the sentencing range provided for by the sentencing guidelines. Furthermore, by rendering the sentencing guidelines advisory, *United States v. Booker*, 543 U.S. 220 (2005) eliminated any argument that the "statutory maximum" sentence is the sentence mandated by the guidelines based upon the facts admitted by movant. *See* 543 U.S. at 233 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment" right to a jury determination); *United States v. Avendano-Aleman*, 145 Fed. App'x 35, 37 (5th Cir. 2005) (recognizing that the statutory maximum sentence has not changed merely because *Booker* rendered the guidelines advisory).

As previously discussed, the latter two claims go to the voluntariness of his plea.  In finding that movant voluntarily and knowingly pled guilty in this case, the Court has already addressed these two claims of pre-plea ineffective assistance, and such claims entitle movant to no relief under § 2255.  Furthermore, once movant voluntarily and knowingly pled guilty, he waived all claims of ineffective assistance of counsel except for those relating to the voluntariness of the plea.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  Because the failure to file a motion to suppress occurred prior to movant's voluntary plea, and is unrelated to the voluntariness of his plea, the Court finds that movant has waived such claim.  Therefore, that claim also entitles movant to no § 2255 relief.

Even in the absence of waiver, however, the failure to file a motion to suppress entitles movant to no relief.  Such failure "does not constitute per se ineffective assistance of counsel."  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  Not only must a movant show that his attorney rendered deficient representation, but he must show actual prejudice from such deficiency.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To show actual prejudice in the context of a failure to competently litigate an unconstitutional search-and-seizure claim under the Fourth Amendment, a movant must show "that his Fourth Amendment claim is meritorious" and "that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  *Kimmelman*, 477 U.S. at 375.  When the alleged failure of counsel occurs prior to a guilty plea, the movant must show that a suppression motion had merit, and that if the motion had been granted, he would not have pled guilty and would have insisted on his right to stand trial.  *See Hill v. Lockhart*, 474 U.S. 52, 57-60 (1985).  As previously discussed, movant has not shown that the Court would have granted the omitted motion to suppress.  Consequently, his claim of ineffective assistance based upon the failure to file such motion fails.

**B.  Ineffective Assistance During Plea Withdrawal**

Movant also alleges that his attorney rendered ineffective assistance during the withdrawal of his plea when he failed to comply with or utilize Fed. R. Crim. P. 32(e) (moved to Fed. R. Crim. P. 11(d) by amendment in 2002) for arguing that a fair and just reason exists for withdrawing the plea.  (Mem. Supp. at 17; Reply at 23.)  More specifically, he alleges that his attorney failed to (1) utilize the seven-factor test set forth in *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984); (2) raise the totality of the circumstances standard; (3) remind the Court that it had agreed to follow the plea agreement; (4) argue that, under *Santobello v. New York*, 404 U.S. 257 (1971), the Court must either require specific performance of the plea agreement or give the defendant the option to go to trial on the original charges; (5) argue that that the specific language of the plea agreement requires the return of property to him.  (Mem. Supp. at 20-21.)

Counsel in this case moved for withdrawal of movant's plea based upon an alleged breach of the plea agreement by the government.  After the Court denied the request for plea withdrawal, counsel filed a motion to reconsider in which he specifically cites to *Santobello*.  Despite the alleged deficiencies of counsel, movant has not shown that counsel's conduct fell outside the range of reasonable assistance.  In addition, he has shown no prejudice from the alleged deficiencies of counsel. The Fifth Circuit, moreover, addressed the alleged breach of the plea agreement and found that the government did not breach the agreement because it had substantially complied with the agreement. *See United States v. Mackay*, No. 00-10380, slip op. at 8-11 (5th Cir. May 28, 2002).  For all of these reasons, movant's claims of ineffective assistance during his plea withdrawal entitles movant to no § 2255 relief.

**C.  Ineffective Assistance During Sentencing**

Movant alleges that his attorney rendered ineffective assistance during sentencing when his attorney (1) caused him to lose a three-point deduction for acceptance of responsibility; (2) allowed his sentence to be calculated using the wrong criminal history category; (3) failed to challenge use of the preponderance of evidence standard; (4) failed to file objections to the PSR; (5) failed to review the PSR with movant; (6) failed to challenge the sufficiency of the evidence to support organizer-leader and gun enhancements; (7) failed to challenge the increased drug amount and allowed him to be sentenced on estimated drug quantities; (8) failed to challenge a proposed enhancement for obstruction of justice; and (9) allowed him to be sentenced without full governmental disclosure regarding the credibility and character of Mears.  (Mem. Supp. at 33-56; Reply at 25-28.)

As previously noted, to successfully state a claim of ineffective assistance of counsel at sentencing, movant must demonstrate (1) deficient attorney performance and (2) that the deficient performance resulted in prejudice to him.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of ineffective assistance of counsel at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney. *Glover v. United States*, 531 U.S. 198, 200-04 (2001).  In other words, the movant must show that counsel's deficiencies created a reasonable probability that his sentence would have been less harsh. *See id.* at 200.

**1.  *Acceptance of Responsibility***

Movant claims that he lost a two- or three-level reduction in his offense level for acceptance of responsibility when his trial attorney stated that he could not accept responsibility and maintain his innocence and request to withdraw his plea.  (Mem. Supp. at 46; Reply at 27.)  He further claims

that his attorney "was ineffective [due to] the fact that government had committed perjury or fraud and obstruction of justice by breaching plea agreement" and that he was "prejudiced by loss of 3 points acceptance of responsibility." (Mem. Supp. at 56.)

Section 3E1.1 of the United States Sentencing Guidelines provides for a two- or three-level reduction in offense level when "the defendant clearly demonstrates acceptance of responsibility for his offense." The application notes to that section provides:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . will constitute significant evidence of acceptance of responsibility for purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

In this instance, movant has shown no specific deficiency of counsel that led to the denial of the reduction for acceptance of responsibility. His repeated attempts to withdraw his plea are inconsistent with acceptance of responsibility. His statements at sentencing show no disagreement with counsel's efforts to withdraw his plea but instead reflect complete agreement with the efforts. Such statements clearly reflect conduct that is inconsistent with acceptance of responsibility, *i.e.*, claiming innocence, contesting various aspects of the case against him, stating that "there is no case because it won't go past probable cause", and contesting the veracity of phone calls that connected him to various co-defendants. (*See* Tr. Sentencing II at 43-60.) Based upon this conduct which was inconsistent with acceptance, the Court denied the reduction of offense level for such acceptance. No deficiency of counsel resulted in such denial. This claim of ineffective assistance of counsel entitles movant to no § 2255 relief.

## 2. *Wrong Criminal History Category*

Movant claims that his trial attorney rendered ineffective assistance when he allowed his sentence to be calculated using the wrong criminal history category. (Mem. Supp. at 37, 51-53.) He claims that, because his incarceration for his two prior convictions ended more than fifteen years before commencement of the offense for which he was convicted, they cannot be used to enhance his sentence. (*Id.*) He contends that the fifteen year period expired on August 25, 1995, and according to the PSR, the offense conduct commenced in December 1995. (*Id.* at 51.) He submits that, although the superseding indictment and factual resume indicate that the conspiracy to which he pled guilty commenced in 1994, those documents also show that the exact commencement date was unknown. (Reply at 15.) He argues that the specific date set forth in the PSR, *i.e.*, December 1995, provides the commencement date, not the imprecise date set forth in the superceding indictment and factual resume. (*Id.*) He further argues that the Court had no jurisdiction to resentence him to 405 months imprisonment under Fed. R. Crim. P. 35 because the amended judgment was entered outside the seven-day period set forth by the rule. (*Id.* at 16.)

With his motion to expand the record, movant provides a letter from his appellate attorney wherein counsel informs movant that "[t]he case law on the [stale conviction] issue clearly indicates that it is the date when sentence is imposed that governs, not when you were paroled (unless your parole was revoked)." (*See* Letter from Goranson to Movant (June 1, 2004), attached to Mot. Expand Record.) Movant also provides the portion of the PSR related to the calculation of his criminal history category. (*See* PSR at 9-10, attached to Letter from Goranson to Movant (June 2, 2004) that is attached to Mot. Expand Record.)

Section 4A1.1 of the United States Sentencing Guidelines provides the basis for calculating a defendant's criminal history category. It provides for the addition of three points to the criminal

history category "for each prior sentence of imprisonment exceeding one year and one month."  *See*

USSG § 4A1.1(a).  Pursuant to USSG § 4A1.2(e), any such sentence "that was imposed within

fifteen years of the defendant's commencement of the instant offense is counted."  In addition, any

such sentence is counted, regardless of when imposed, if it "resulted in the defendant being incar-

cerated during any part of the fifteen-year period."[21]  *Id.* § 4A1.2(e).

        Rule 35(a) of the Federal Rules of Criminal Procedure provides that "[w]ithin 7 days after

sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other

clear error."  Rule 35(c) defines "sentencing" as "the oral announcement of the sentence."  *See also*

*United States v. Gonzalez*, 163 F.3d 255, 264 (5th Cir. 1998) (holding that the "'imposition' of sent-

ence means the date of oral pronouncement").  The calculation of the seven-day period is governed

by Fed. R. Crim. P. 45(a), which excludes the day "that begins the period" and "intermediate Satur-

days, Sundays, and legal holidays when the period is less than 11 days."

        In this instance, the Court initially calculated movant's sentence based upon the PSR, which

reflected a Criminal History Category III based upon two prior convictions – three criminal history

points for a felony conviction for conspiracy to possess with intent to sell a controlled substance and

one point for a misdemeanor conviction for possession of marijuana.  (*See* Sentencing Tr. II at 70,

PSR ¶¶ 36-37 (relevant portion attached to Mot. Expansion of Record).)  The Court, however, sub-

sequently amended its judgment to eliminate any reliance upon the misdemeanor conviction.  (*See*

Order of Apr. 10, 2000; Am. Judgment.)  In light of such amendment, any claim of ineffective

assistance based upon the initial inclusion of the misdemeanor conviction in the sentencing calcu-

lations necessarily fails for lack of prejudice.  Movant's argument based upon Fed. R. Crim. P. 35 is

misplaced because, when the seven-day period is computed in accordance with Rule 45(a), the Court

---

[21]  The letter from Goranson to movant dated June 1, 2004, apparently overlooks this portion of USSG § 4A1.2(e).

entered its amended judgment within seven days of its March 30, 2000 oral pronouncement of sentence.  The seventh day is April 10, 2000, because Thursday, March 30 and the weekends of April 1, 2, 8, and 9 are excluded from the calculation.

With respect to the inclusion of the felony conviction, the Court finds no deficiency of counsel.  The Court properly increased movant's criminal history by three because he had been sentenced to fifteen to sixty months imprisonment for a drug offense on November 30, 1979, and was released to parole on such sentence on August 25, 1980, (*see* PSR ¶ 36).  Movant pled guilty to a conspiracy that began in 1994.  (*See* Plea Agreement at 1; Superseding Indictment at 3; Factual Resume at 1.)  Although the Plea Agreement and Superseding Indictment indicate that the precise commencement date is unknown, both documents clearly reflect that the conspiracy began no later than early 1994.  (*See* Superseding Indictment at 3 (showing that conspiracy was alleged to have commenced "[b]eginning at least as early as January, 1994, the exact date being unknown to the Grand Jury"); Factual Resume at 1 (showing that conspiracy commenced "[b]eginning in or around January, 1994, the exact date being unknown").  Consequently, less than fifteen years had passed between his release from incarceration and commencement of the conspiracy.  The felony conviction was thus properly considered in the sentencing calculations, and counsel had no basis to object to its inclusion in the calculation.  The Court finds no deficiency of counsel related to the use of the prior felony conviction to determine his sentence.  "Counsel cannot be deficient for failing to press a frivolous point."  *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).  Nor is "counsel . . . required to make futile motions or objections."  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Counsel need not assert and pursue frivolous objections or challenges to render effective assistance. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

### 3. *Failure to Challenge Standard of Proof*

Movant claims that his attorney failed to challenge the standard of proof used before en-hancing his sentence.  (Mem. Supp. at 37-40; Reply at 19-22.)  Although "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt," *United States v. Booker*, 543 U.S. 220, 244 (2005), the appro-priate standard of proof for a sentencing determination under the discretionary regime established in *Booker* is a preponderance of the evidence, *see, e.g., United States v. Mares*, 402 F.3d 511, 519 (5th Cir.) (holding that "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence), *cert. denied*, 126 S. Ct. 43 (2005); *United States v. Jauregui*, No. 05-50547, 2006 WL 2460762, at *1 (5th Cir. Aug. 21, 2006) (per curium) (following *Mares* and noting that, "[b]y rendering the Guidelines advisory, *Booker* eliminated the Sixth Amend-ment concerns that prohibited a sentencing judge from finding facts relevant to sentencing").  Con-sequently, even if the failure to challenge the standard of proof used pre-*Booker* at sentencing under the mandatory sentencing guidelines constitutes deficient representation, such deficiency ultimately did not prejudice movant.

Movant argues that due process requires the application of a clear-and-convincing standard of proof "when an enhancement based upon uncharged conduct has an extremely disproportionate effect on the length of a defendant's sentence."  (Mem. Supp. at 39.)  The Fifth Circuit has recog-nized that a "more stringent standard of proof" may apply in some circumstances.  *See United States v. Harper*, 448 F.3d 732, 734 n.1 (5th Cir.) (noting that the defendant did not "contend that the magnitude of the sentencing enhancement amounted to a 'tail that wags the dog of the substantive

offense' thereby requiring the use of a more stringent standard of proof"), *cert. denied*, 127 S. Ct. 285 (2006); *United States v. Mergerson*, 4 F.3d 337, 343-44 (5th Cir. 1993). Nevertheless, "the Fifth Circuit has yet to require a trial court to apply the higher burden of proof at sentencing", and the preponderance-of-the-evidence standard used to support a sentence-level increase "has been continuously used by the Fifth Circuit." *Mitchell v. United States*, Nos. 3:06-CV-0987-L, 3:05-CR-099-L, 2006 WL 3831233, at *5 (N.D. Tex. Dec. 29, 2006) (order of district court accepting findings and recommendation of magistrate judge).

Furthermore, soon after *Mergerson*, the Fifth Circuit specifically found that a difference "between approximately six and almost twenty years . . . does not constitute such a dramatic effect that it would justify considering, much less imposing," a more stringent standard of proof. *United States v. Carreon*, 11 F.3d 1225, 1240 (5th Cir. 1994). The Fifth Circuit thereafter specifically declined to "depart from th[e] well settled practice" of using the preponderance-of-the-evidence standard of proof in a non-capital, drug conspiracy case. *See United States v. Millsaps*, 157 F.3d 989, 995 (5th Cir. 1998). The Circuit stated:

> Although the determination of the quantity of drugs involved in this conspiracy had a substantial impact on Millsaps' sentence, it does so in every other drug case as well. To accept a higher burden of proof under the facts of this case would cause us to impose a higher burden of proof in every narcotics prosecution. We routinely employ the preponderance of the evidence standard in calculating the quantity of drugs involved in drug crimes, and we will not depart from that well settled practice.

*Id.* The Circuit has also found use of the clear-and-convincing standard "unjustified" when a "twelve-point enhancement turned a four-to-ten month sentence into a thirty-seven-to-forty-six month sentence." *United States v. Lindsley*, 254 F.3d 71, 2001 WL 502832, at *5 (5th Cir. May 3, 2001) (per curiam) (Table, text on Westlaw).

In this case, movant pled guilty and signed a factual resume wherein he admitted that he conspired "to distribute and possess with intent to distribute at least 1000 kilograms of marijuana." His plea exposed him to a statutory range of punishment between ten years and life imprisonment. Although the determination of the quantity of drugs involved in movant's conspiracy had a substantial impact on his sentence, such determination does not justify the application of a different standard of proof. That the Court applied two enhancements to further increase movant's offense level by six levels – thus resulting in a final sentencing range of 324 to 405 months imprisonment – likewise does not justify a departure from the typical preponderance-of-the-evidence standard of proof. Under existing circuit law, movant's attorney did not render deficient representation by failing to object to the standard of proof utilized at sentencing.

Movant, moreover, has not affirmatively shown that he was prejudiced by the failure to object to the standard of proof. To show prejudice in such context, movant must show that the Court would have sustained the objection had it been asserted and that the more stringent standard of proof creates a reasonable probability that movant would have received a less harsh sentence. Movant has not shown that the Court would have sustained the objection. To the contrary, in light of existing Fifth Circuit precedent, there is not even a reasonable probability that the Court would have sustained an objection to the standard of proof had counsel asserted it.

For all of these reasons, this claim entitles movant to no § 2255 relief.

### 4. *Failure to File Written Objections to PSR*

Movant claims that his attorney failed to file written objections to the PSR. (Mem. Supp. at 37.) Although counsel failed to file such objections, he explained that failure at sentencing and made verbal objections. (Tr. Sentencing II at 2, 40-43.) Movant voiced no disagreement for the explanation given for the failure to file written objections, and apparently agreed with the reasons

for the failure.  (*See id.* at 43-60.)  In view of the verbal explanation for the failure to file written objections, it appears that counsel had sound reasons for not filing written objections.  The Court, however, need not determine whether such failure constitutes deficient representation because, in light of the oral objections made at sentencing, movant has shown no prejudice from the failure to file written objections.  The Court did not deem the objections waived and allowed counsel to orally make his objections.  This claim entitles movant to no habeas relief.

### 5.  *Failure to Review PSR with Movant*

Movant claims that his attorney failed to review the PSR with him.  (Mem. Supp. at 37.)  The record, however, belies the allegation.  Counsel represented to the Court that he and movant had reviewed the PSR.  (Tr. Sentencing II at 2.)  Movant did not state otherwise when he had the opportunity to do so.  (*See id.* at 43-60.)  He has provided no third-party affidavit to support this claim.  The Court finds no deficiency of counsel with respect to reviewing the PSR with movant.  Movant, furthermore, has shown no prejudice from the alleged failure of counsel.  This claim entitled him to no § 2255 relief.

### 6.  *Failure to Challenge Sufficiency of Evidence for Enhancements*

Movant claims that his attorney failed to challenge the sufficiency of the evidence to support organizer-leader and gun enhancements.  (Mem. Supp. at 37, 40-45.)  However, movant provides no basis for such challenges.  The evidence presented at sentencing by the government establishes by a preponderance of the evidence that movant held a leadership role in the conspiracy and possessed a firearm.  The testimony of Agent Moser concerning the wiretaps suffices to enhance the sentence for movant's leadership role.  (*See* Tr. Sentencing II at 7, 13.)  The testimony of Agent Megli regarding the seizures and co-defendant's admissions suffices to enhance the sentence for possession of a firearm.  (*Id.* at 34, 37.)  Counsel had no basis to challenge these enhancements, and

thus did not render deficient representation by failing to do so. Movant, furthermore, has shown no prejudice from the failure to challenge the enhancements. He has shown no reasonable probability that, had counsel challenged the enhancements, the Court would not have applied them. This claim entitles movant to no relief under § 2255.

### 7. *Failure to Challenge Drug Amount*

Movant claims that his attorney failed to challenge the increased drug amount and allowed his sentence to be made on estimates of the drug quantities. (Mem. Supp. at 35-37.) However, movant again provides no basis for such challenge. The government presented evidence from Mears that his part of the conspiracy involved 7,500 to 10,000 pounds of marijuana. (*See* Tr. of June 4, 1998, at 80.) The government presented evidence from Sands that he transported about 6,000 pounds of marijuana between July 1995 and early 1997. (*Id.* at 89-90.) Based upon drug ledgers from Rosales, Agent Moser testified that the conspiracy involved more than 19,000 pounds of marijuana, approximately 5,000 of which could be directly attributed to movant, not including the marijuana reflected in ledgers obtained from Sands. (Tr. Sentencing II at 8-9; 15-16.) Agent Jones testified that the ledgers from Sands showed distribution of more than 12,000 pounds (5,706 kilograms) of marijuana. (*Id.* at 23.) Because the evidence presented at sentencing overwhelmingly supports a finding that the conspiracy involved more than 5,000 kilograms of marijuana, counsel did not render deficient representation by not challenging the drug quantity attributed to the conspiracy. This claim entitles movant to no relief.

### 8. *Failure to Challenge Proposed Enhancement for Obstruction of Justice*

Movant claims that his attorney failed to challenge a proposed enhancement for obstruction of justice. (Mem. Supp. at 37, 45; Reply at 27.) Although counsel asserted no specific challenge to such enhancement, the Court did not enhance the movant's sentence for any obstruction of justice.

(Tr. Sentencing II at 70.)  Movant thus cannot show a reasonable likelihood of a less harsh sentence in the absence of the deficiency of counsel.  In the absence of prejudice, this claim entitles movant to no relief under § 2255.

### 9.  *Full Governmental Disclosure*

Movant claims that his attorney allowed him to be sentenced without full governmental disclosure regarding the credibility and character of Mears.  (*See* Mem. Supp. at 33-36.)  Movant, however, does not indicate what counsel could have done to require full governmental disclosure. Nevertheless, this claim fails even if the Court assumes that counsel rendered deficient representation in that respect.  Movant has not affirmatively shown that his sentence would have been less harsh in the absence of the alleged deficiency.  In the absence of such showing, this claim cannot succeed.

### D.  Ineffective Assistance on Appeal

Movant also claims that his appellate attorney rendered ineffective assistance by failing to raise two issues on appeal:  (1) the propriety of the weapon enhancement and (2) the use of a prior conspiracy conviction to determine his criminal history category.  (Mem. Supp. at 45, 52.)  With his motion to expand the record, movant provides two letters and an affidavit from his appellate attorney wherein the attorney indicates that, based on the information that he possessed, he should have raised the latter issue on appeal.  (*See* Attachments to Mot. Expand Record.)

To be effective, counsel need not raise every non-frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'"  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that

certain avenues will not prove fruitful.  Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).  To determine whether movant's appellate counsel was deficient, the Court thus must consider whether the omitted challenges "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Appellate counsel failed to raise movant's claims regarding the propriety of the weapon enhancement and the use of a prior conspiracy conviction to determine his criminal history category.  Such claims, however, had insufficient merit to warrant raising them on appeal for the same reasons that trial counsel had no basis to challenge the enhancements at sentencing.  An appellate attorney does not render ineffective assistance when he or she fails to assert a meritless claim on appeal.  In addition, the claimed omitted appellate claims do not fall within the limited right of appeal preserved after movant voluntarily pled guilty.  (*See* Plea Agreement at 6-7 (indicating that movant only reserved the right to appeal or collaterally challenge (a) any punishment imposed in excess of a statutory maximum; (b) any arithmetic error at sentencing, and (c) any "non-frivolous claim of ineffective assistance of counsel").  An appellate attorney does not render ineffective assistance when he or she fails to assert a claim that falls outside the limited right of appeal preserved after a voluntary plea.  This claim entitles movant to no relief.  The information provided with movant's motion to expand the record does not alter that conclusion.

## VI.  EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case.  The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Upon review of the motion to vacate and the files and records of this case, an evidentiary

hearing appears unnecessary.  In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

Although movant has provided affidavits to support some of his claims, and in some circumstances, *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) may require an evidentiary hearing based upon proffered affidavits, the facts of this case are distinguishable from *Sanderson* in that movant has provided no affidavit that creates a fact issue requiring resolution through an evidentiary hearing.  While some issues in this case present a close call as to whether an evidentiary hearing is required in light of the proffered affidavits of counsel regarding their advice and representations to movant, the Court ultimately concludes that no hearing is necessary because it has assumed deficient performance by counsel but found no showing of prejudice.

## VII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

SIGNED this 31st day of January, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

64